**Lloyd Wilson PALMER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 41004.**

Court of Criminal Appeals of Texas.

Jan. 31, 1968.

**324**

James B. Zimmermann, Dallas, on appeal only, for appellant.

Henry Wade, Dist. Atty., Scott Bradley, David Johnson and William Mason, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

Following the state's request to strike the firearm allegation in the indictment, which was granted by the court, the appellant, upon a trial before a jury, entered a plea of guilty to the offense of robbery, and his punishment was assessed at life.

The appellant timely filed his application for probation, and his request for the same was submitted to the jury.

As ground for reversal, the appellant contends that the prosecutor committed material error calculated to injure the rights of the appellant in his direct and re-direct examination of Officer Anderton, a state's witness.

Officer Anderton testified that he was acquainted with and that the appellant bore a bad reputation for being a peaceable and law abiding citizen in his (appellant's) community.

On cross-examination, Anderton testified that he knew of appellant's trouble with some checks and a theft case.

On re-direct, Anderton testified that he knew that appellant received a three-year probated sentence in Oklahoma for interstate transportation of a stolen motor vehicle; that he knew that appellant, on the night of the instant robbery, stole a Cadillac from Mrs. Schwartz at the point of a gun; that he had heard that appellant was arrested in 1964 for theft of an airplane; and he also heard that he was arrested in May, 1966, for illegally carrying a pistol.

No objections were made to the admission of the above testimony.

The testimony about the checks and the theft case was first inquired about by the appellant.

Further, the testimony was admissible as a part of the appellant's prior criminal record on the issue of punishment. Rojas v. State, Tex.Cr.App., 404 S.W.2d 30.

Error is urged on the ground that when appellant's attorney, during his argument to the jury, was referring to appellant's companions, saying that he understood that one was still on the "run," and the others had been tried but he was not sure, the prosecutor spoke aloud the word "life," which was so inflammatory and prejudicial that no instruction by the court could have cured the error.

Whether the prosecutor used the word "life" as the appellant contends is in dispute.

■ The word "life" was used according to the court reporter's transcript of the argument, and said transcript is approved by appellant's counsel. The prosecutor approved said transcript except for the use of the word "life," and states that he used the word "right." The court certified that he is unable to remember whether the word "right" or "life" was used.

According to the record, no objection was made to the use of the word "life" if it was used. No motion for mistrial was made at that time. In light of the record, it is concluded that no reversible error is presented.

The other grounds of error urged for reversal complain of the state's closing argument to the jury.

The appellant submits the following arguments of the state in his brief as improper:

" * * * had it not been for the fact that that patrolman was nearby and went to the scene almost immediately, I assure you that there would have been some horrible happening to the Dooleys, and I assure you there would not have been a trial, in all probability, there probably would not have been any witnesses to testify.

"Now, I don't know what they were going to do with these chains and locks but I will submit to you that from the facts of this case, there is good evidence that they would have chained these people up, maybe chained Mrs. Dooley up and tortured her until Mr. Dooley had gone to the bank to get them more money—

"Mr. Fowler (Appellant's Counsel): Now, your Honor—now, your Honor, we are going to object to this; there is nothing in the testimony about torture or anything of that kind.

"The Court: Sustain it.

"Mr. Fowler: We ask that it be stricken from the record.

"The Court: I sustained it, and disregard it, ladies and gentlemen of the jury.

\* \* \* \* \* \*

"(By State's Counsel): * * * we haven't asked the jury to keep him down there for life, put him away for life, we haven't asked you to keep him down there, all we have asked you to do is return a sentence, set a sentence of 99 years or life.

"Now, Mr. Fowler talked about him being rehabilitated, I will tell you the folks that the only way that he will have served enough time that he could possibly be rehabilitated in this state is for you to return a sentence of 99 years or life.

"Now, if you want to do something for the man, if you think he is capable of being rehabilitated then you return a sentence of 99 or life, and I assure you, from the bottom of my heart, that that is the only way that he will be rehabilitated, that is the only way that he will have served enough time that when he comes back that he will be rehabilitated, and you have my word on that.

"Mr. Fowler has told you about this man running around with police characters, well, this is a regular little Orphan Annie we have got here, isn't it? I suppose he wouldn't call this man a police character."

No objections were made to the above four paragraphs of argument.

For the defense, the appellant, personally, made the opening argument to the jury. Among other things, the appellant told the jury that all the testimony was true, and he would not attempt to justify the wrong he had done, that he would do his best to live up to a probated sentence, and asked for their mercy.

Next, appellant's attorneys presented their argument to the jury.

The closing argument complained of has been carefully considered in light of the objections made, the court's rulings, the plea of guilty, the jury argument of the appellant, along with the testimony, and it is concluded that it presents no error.

The judgment is affirmed.